United States of America,  )
                            )
           Plaintiff,       )
                            )
     v.                     )
                            )   No. CR—08-0907 DLJ
Del Edmund Simon,           )
                            )   **ORDER**
           Defendant.       )
_____)

On July 17, 2009 this Court held a hearing on the claim for restitution made by "Amy", a person whose images of childhood sexual abuse appeared on the computer of defendant Del Edward Simon ("Simon"). These images formed part of the basis of Simon's criminal offense, conviction and sentence. Attorney Wade Rhyne appeared on behalf of the United States and defendant was represented by Attorney Susan Raffanti. Attorney James Marsh made a special appearance on behalf of his client, "Amy." Having reviewed the papers and having heard oral argument on this matter, the Court finds the following.

**I.  Background**

On November 6, 2007 the government seized Simon's computer (serial # G85196Z5SCG) and sent it out for forensic analysis. This computer had images and videos on it of minors engaged in sexually explicit conduct. In May 2008 the FBI sent copies of the material on Simon's computer to the National Center for Missing and Exploited Children ("NCMEC") for review of the images. NCMEC found that defendant possessed "1,827 images depicting a total of 75 known victims." Among those images were 43 still images depicting the childhood sexual abuse of the person who is now referred to by the pseudonym of "Amy."

Government Restitution Memo at pages 2-3.

On December 10, 2008 the government filed an Indictment charging a single count of 18 USC § 2252(a)(4)(B) -possession of child pornography, based on the images of childhood sexual abuse found on Simon's computer.  Simon was arrested on December 12, 2008.

On February 20, 2009 Defendant pled guilty to the single count of the indictment pursuant to a plea agreement filed pursuant to Federal Rule of Criminal Procedure 11(C)(1)(c). The plea agreement sets out that a reasonable disposition of the case would be a "sentence of imprisonment of no less than 60 months but no more than the low end of the Guidelines range for the adjusted offense level of 30 and the applicable criminal history category determined by the Court"; a "term of supervised release of 10 years"; and a "fine of not more than $15,000".  See Plea Agreement at ¶ 8.

On May 29, 2009 the Court sentenced Defendant in accordance with the plea agreement to 60 months in prison; 10 years of supervised release; and to the maximum fine set out in the plea agreement, $15,000. During Defendant's sentencing proceeding, the Court was informed for the first time that the United States Probation Office ("USPO") had received a victim restitution request during the time the Probation Sentencing Report was being prepared.  Attorney James Marsh had written to the United States Attorney's office on behalf of his client "Amy" requesting approximately $3.4 million dollars in restitution from defendant Simon based primarily on an attached

2

expert report which assessed, inter alia, her lost future earnings, expert witness fees, and past and future medical costs. Based on this request, the issue of restitution was set for further briefing and a hearing.

## II. Legal standard

A plea bargain, being contractual in nature, is subject to contract law standards. United States v. Krasn, 614 F.2d 1229, 1233 (9th Cir.1980). "In determining whether a plea agreement has been broken, courts look to what was reasonably understood by [the defendant] when he entered his plea of guilty. If disputed, the terms of the agreement will be determined by objective standards." United States v. Travis, 735 F.2d 1129, 1132 (9th Cir.1984) (quotations and citation omitted).

## III. Discussion of the Plea Agreement

Defendant argues that the subject matter of restitution was never discussed during plea negotiations, nor in the plea agreement itself. He now argues that because he entered into his plea agreement with no knowledge of a potential restitution request, that granting such a request now would exceed the penalties set out in his plea agreement and would therefore conflict with Federal Rule of Criminal Procedure 11.

Rule 11(b)(1) of the Federal Rules of Criminal Procedure states that before accepting a plea of guilty, the court must advise the defendant of the maximum possible penalties for his crime including "(K) the court's authority to order restitution". Additionally, Federal Rule of Criminal Procedure

3

1   11(c)(1) requires a district court, before accepting a guilty
2   plea, to advise the defendant that "the court may also order
3   the defendant to make restitution to any victim of the
4   offense...." Fed.R.Crim.P. 11(c)(1).

5   The government and Simon entered into a written plea
6   agreement in this case.  That document expressly provided that
7   the maximum statutory penalties for the single count of the
8   Indictment were: a ten year prison sentence, a $250,000 fine,
9   lifetime supervised release, $100 special assessment, and
10  registration as a sex offender. There was no reference to the
11  subject matter of restitution.  Plea Agreement,¶ 1. B. Beyond
12  this general advisement as to the maximum penalties, as already
13  described, the specific penalties actually agreed to by the
14  parties pursuant to Rule 11(c)(1)(c) were set out in ¶ 8.  Here
15  again, restitution was not mentioned as a possible penalty.

16  It is apparent that restitution was not a subject of the
17  plea negotiation in this case.  At no time prior to Simon
18  entering his plea was there any notice to him that the case
19  included a possible claim for restitution.  At the point the
20  plea was being negotiated it appears that even the government
21  did not believe that restitution was going to be an issue.  The
22  Probation Report in this case says specifically, "restitution
23  is not an issue."  Report pp. 67-68.  In this District all the
24  parties are given a draft of the Probation Sentencing Report
25  before it is filed, and they are given the opportunity to
26  object to the content of the Report.  The government made no
27  objection to the statement in the draft report that

4

"restitution is not an issue." Given the history of this case, and the underlying legal context, it may well be that the government should note the possibility of restitution in each child pornography case, even though it has received no specific request at that point. However, that did not happen in this case.

Defendant argues that an order for restitution is barred by the strict notice requirements of Rule 11, and also by basic notions of fairness. The Ninth Circuit in United States v. Whitney, 838 F.2d 404 (9th Cir. 1988) has provided useful guidance on the issue of when a later order of restitution runs contrary to a Rule 11(c)(1)(c) plea. In Whitney, the fraud counts to which Whitney pled guilty did not state actual dollar losses sustained by the victims of the fraud. Nor did the plea agreement entered into by the defendant and the government contain any reference to restitution. The Ninth Circuit found that the trial court had erred in imposing restitution as a probation condition.

The Ninth Circuit went on to state that in the plea bargain context, "where the defendant foregoes the right to trial as the condition of his plea, he must know to what he pleads." Whitney, 838 F.2d at 405. The Whitney court held that "the court will carry out a plea agreement that specifically determines the amount of restitution, provided the defendant freely and voluntarily consents to it, and the agreement has been fully explored in open court." Id. (Citations omitted)

At sentencing, Whitney submitted a memorandum that

5

computed the actual damages caused by the fraudulent land scheme. However, the Ninth Circuit rejected the government's contention that the damages figures in Whitney's memorandum could form the basis of a restitution order absent evidence that Whitney knew when he submitted those figures that they might be used as the basis of the restitution order. See also Boykin v. Alabama, 395 U.S. 238, 244 (1969) (defendant must have "a full understanding of what [his] plea connotes and of its consequence.").

In United States v. Pomazi, 851 F.2d 244 (9th Cir. 1988), the Ninth Circuit reaffirmed that courts must look at notions of basic fairness in deciding whether to assess restitution not agreed to in plea agreements. Id. (where defendant had been advised during plea that he may suffer a fine, imposition of restitution, instead of a fine was not a breach of the plea agreement so long as the restitution did not exceed the fine amount of which defendant had been advised).

Restitution may still be ordered if the defendant has been advised of the maximum fine he faces under his plea agreement, and the intended restitution award (along with any fine imposed) does not exceed the maximum financial penalty allowed under the plea agreement. See United States v. Pomazi, 851 F.2d 244, 247 (9th Cir. 1988), abrogated on other ground *sub nom*. Hughey v. United States, 495 U.S. 411 (1990); United States v. Rogers, 984 F.2d 314, 318 n.5 (9th Cir. 1993). See also United States v. Kamer, 781 F.2d 1380 (9th Cir. 1986) (failure to expressly state restitution request of over one million dollars

6

in plea agreement amounted to a breach of the agreement).

It is clear to the Court that the only financial penalty agreed upon by the parties in this Rule 11(c)(1)(c) plea agreement was the fine amount of "up to $15,000." Plea Agreement ¶ 8. The Court has already ordered defendant to pay the entire $15,000 – the maximum agreed upon fine amount. Therefore, Simon has already been ordered to pay the total amount he had been put on notice that he might be ordered to pay.

The government makes an argument that the plea agreement does give notice of the possibility of restitution by implication. It argues that the statements in the boilerplate language of ¶ 4, "I also agree to waive any rights that I may have to appeal any aspect of my sentence , including any orders relating to forfeiture or restitution" and ¶ 8 , ". . . I will make a good faith effort to pay any fine, forfeiture or restitution I am ordered to pay," are sufficient to provide notice that he may be ordered to pay restitution in this case. The Court disagrees. This language is wholly insufficient to meet the notice requirements of Rule 11, particularly in the circumstance of this case where the defendant is being asked to pay over $3 million in restitution as a result of his plea of guilty.

If Simon had been made aware of the potential for a restitution award of this magnitude in the face of so little governing precedent as to the outcome, he well may not have agreed to waive his right to trial or his right to appeal on

7

the issue of restitution.

Under controlling law, had the Court not imposed the maximum fine allowable under this Rule 11(c)(1)(C) agreement, some award of restitution up to that amount could still have been imposed without violating the due process requirements of Federal Rule of Criminal Procedure 11. The Court holds that the maximum financial penalty contemplated by the parties in entering into the plea agreement has already been imposed by the Court, and that under the circumstances no further monetary penalty, including an order of restitution, may be issued.

**IV. Causation**

Based on its finding that a restitution award would be in violation of the plea agreement, the Court need not reach the issue of causation of injury to Amy by Simon, or of the monetary value of the injury attributable to Simon's acts of viewing the images.  However, the Court notes that had it been required to reach this issue, it would have found that the government had not met its burden of showing a causal link between defendant's act of viewing the images of Amy to any specific injury to Amy.

A.  <u>Legal Standard</u>

Amy has requested restitution pursuant to the Mandatory Restitution for Sex Crimes section of the Violence Against Women Act of 1994 [VAWA], codified at 18 U.S.C. 2259.  Section 2259(b)(2) states that an order for restitution under the section "shall be issued and enforced in accordance with section 3664 in the same manner as an order under section

8

3663A." Section 3663A provides: " For the purposes of this section, the term 'victim' means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." 18 U.S.C § 3663A(2). 18 U.S.C. § 3664(e) provides that, "[t]he burden of demonstrating the amount of the loss sustained by the victim as a result of the offense shall be on the attorney for the government," and that a dispute as to the proper amount of restitution must be resolved by the district court by a preponderance of the evidence.

B. <u>Factual Context</u>

Amy is now 19 years of age. She was sexually abused as a child by her uncle. The uncle also made films of the sexual abuse and began their distribution. The images have been in circulation on the internet for at least the last 10 years. The uncle has been convicted of the sexual abuse of Amy and sentenced to Federal Prison. He was also ordered to pay some $6,000 in restitution, which was to be paid for third party expenses, none was to be paid directly to Amy.

Sometime in early 2006 the defendant Simon used the credit card of his deceased mother to pay for access to pornographic web sites. We know that as of November 2007, when his computer was seized, that he possessed images of Amy's sexual abuse, but

9

it is not known when he actually downloaded those images.  No evidence has been presented to the Court that Simon's criminal conduct extended beyond possession itself.  There has been no evidence presented to the Court that Simon ever engaged in any act of active sexual abuse; that he has ever produced any images of such conduct; or that he has ever engaged in the distribution of the images he possessed or of any other images of child pornography.

The expert report submitted to this Court in support of the restitution claim was originally prepared for and submitted to the Federal District Court in Connecticut.  In that case a defendant had been convicted of the offense of receipt and distribution of child pornography in violation of 18 U.S.C. § 2252A(a)(2), and the offense conduct involved, *inter alia*, images of Amy.  This report was prepared in the absence of any knowledge of defendant Simon's conduct, and accordingly contains no discussion or analysis of that conduct.

C.  Discussion

Counsel for the victim, Amy, argues that the law applicable to restitution in child pornography cases does not require the government to establish that the criminal conduct of the defendant proximately caused any injury to the victim for which restitution is claimed. Counsel for Amy contends that in this case Simon is in fact an end-user of the sexual abuse images of Amy, and that this fact establishes that he is a participant in the collective criminal conduct that has produced, distributed and continues to use the sexual abuse

10

images of Amy.  It is contended that as a result he is liable to pay restitution on a joint and several basis for the harm caused to Amy.  The Court does agree that end-users of child pornography are engaging in a form of sexual abuse and that the funds they provide constitutes a principal reason that the child pornography industry flourishes in this country.  The funds provided by end-users is certainly one of the justifications for the decision to make child pornography a Federal crime and to commit resources to control it, but the Court does not agree that it is proper to use that fact to override the traditional definitions of liability for restitution.

The Ninth Circuit considered the causation issue in United States v. Laney, 189 F.3d 954 (9th Cir. 1998).  In that case, Laney and a number of other defendants were members of a group that created and distributed sexual abuse images of children.  Images were made on-line of a 10 year-old victim being abused.  Although he did not participate directly in the on-line incident, Laney had consulted with and advised the persons who carried out the sexual abuse.

Laney plead guilty to a conspiracy to sexually exploit children and to the distribution of child pornography. As part of the sentencing proceedings, the court ordered Laney to pay some $60,000 in restitution, holding him jointly and severally liable with 5 other co-defendants.  In its decision, the Ninth Circuit held that "Section 2259 . . . incorporates a requirement of proximate causation . . . a causal connection

11

between the offense of conviction and the victim's harm" and that Laney had caused harm to the victim. Id. at 965. The Laney court also noted that the causation requirement is narrower for restitution awards than it is for a finding of relevant conduct under U.S.S.G. § 1B1.3, holding that "Section 2259 does not make a defendant automatically liable to pay restitution for every crime that forms part of that defendant's 'relevant conduct' under U.S.S.G. § 1B1.3. A comparison of the language of the Guidelines and Section 2259 shows that a court may hold a defendant responsible for a broader range of harms connected with the defendant's crimes when it calculates a sentence than it may consider when it crafts a restitution order." Id.

Counsel for Amy contends that Laney was wrongly decided. That argument, of course, has no weight in a District Court within the Ninth Circuit. It is also the opinion of the Court that the substance of this argument should have no weight in any Circuit. At bottom, the claim for restitution in this case is that Simon should be ordered to pay restitution for injury to the victim that he did not cause, but that was caused by the independent acts of other persons. At the time of his sentence there was no argument that Simon should be punished for the criminal acts of Amy's uncle. That conduct is clearly not "relevant conduct" of Simon which should be considered by the Court in deciding the sentence to be imposed on Simon. There is no reason to suggest that the analysis should be not be the same as to the matter of restitution. In fact, the

12

Laney decision holds that the nexus between "relevant conduct" and injury for restitution purposes, should be even clearer than the nexus between "relevant conduct" and sentence in the context of sentencing.

The Court has been cited to child pornography cases where each participant in joint conduct that harmed the victim has been ordered to pay restitution. In those cases, however, the criminal defendant has been found to be directly or vicariously liable for the criminal conduct that caused the harm -- typically as a co-conspirator. The Court has not been cited to any case where the defendant in a child pornography case has been ordered to pay restitution for harm to a victim which was caused by the conduct of another person for which the defendant is not criminally liable.

Additionally, the Court is not aware of any case where restitution has been ordered in a case where the conduct is limited to the end-use of child pornography. The government's citation to United States v. Van Cauwenberghe, 827 F.2d 424, 435 (9th Cir. 1987), cert denied, 108 S.Ct. 773 (1978) for the notion that joint and several liability is available, actually underscores the fact that for there to be joint and several liability there must be co-defendants. In Van Cauwenberghe, defendant appealed from a criminal conviction on one count of wire fraud. Van Cauwenberghe argued he should not have been ordered to make restitution to one of the victims based on a count for which he was not convicted. The Court held that since the indictment alleged the total amount to have been

13

fraudulently obtained, defendant had fair notice of the ceiling above which a restitution order would have been "improper." The Court went on to state that this restitution order was proper because the lower court could have held defendant liable for fraud with his co-defendants. There are no co-defendants here.

This is not to say that there can never be a case where restitution should be ordered in an end-use possession case. However, based upon the discussion above, it is the opinion of this Court that a restitution order in such a case must be based upon the identification of a specific injury to the victim that was caused by the specific conduct of the defendant. In the information provided to this Court in this case there is evidence of harm to Amy from the conduct of others, but there is no evidence of harm to Amy caused by defendant Simon. Under these circumstances, the government has not met its burden of proof and there can be no restitution order as to the defendant Simon.

IV. Conclusion

As set out in detail above, no restitution was contemplated in the plea agreement between the government and defendant Simon and the Court has already awarded the maximum fine amount set out in that agreement. The Court holds that any further monetary award in this case is precluded by Rule of Criminal Procedure 11 and therefore no restitution will be awarded.

14

IT IS SO ORDERED.

Dated: August 7, 2009

D. Lowell Jensen
United States District Judge